

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**MSIP I JACKSON, LLC**   PLAINTIFF

VS.   CIVIL ACTION NO. 3:15-cv-683 DPJ-FKB

**NISSAN NORTH AMERICA, INC.**   DEFENDANT

## COMPLAINT

COMES NOW, Plaintiff MSIP I Jackson, LLC, by and through its attorneys, and for its Complaint against Defendant Nissan North America, Inc., states as follows:

1. Plaintiff is MSIP I Jackson, LLC ("MSIP"), a Mississippi limited liability company, with its main office located at 6632 Telegraph Road, Suite 350, Bloomfield Hills, Michigan 48301.

2. Defendant is Nissan North America, Inc. ("Nissan"), a California corporation with its principal office at One Nissan Way, Franklin, Tennessee 37067. Nissan may be served with process by serving its registered agent CSC of Rankin County, Inc., located at Mirror Lake Plaza, 2829 Lakeland Drive, Suite 1502, Flowood, Mississippi 39232.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter as there exists diversity of citizenship between the parties and the amount in controversy is in excess of $75,000.

4. Venue is appropriate in this Court since the lease agreement at issue concerns property located in Hinds County, Mississippi.

## FACT

5. MSIP is in the business of owning and leasing office and warehouse space located at 3974 I-55 Frontage Road South, Jackson, Mississippi 39209, in Hinds County, Mississippi ("I-55 Business Center").

6. On or about October 2, 2012, Nissan entered into a Standard Commercial Lease Agreement ("Lease Agreement") with MSIP for the lease of the I-55 Business Center. A true and correct copy of the Lease Agreement is attached hereto as Exhibit "A."

7. The term of the lease was from October 1, 2012 to September 30, 2015, with an option to renew. *Exhibit A, Lease Agreement at ¶¶ I.B., I.C.*

8. The Lease Agreement required the payment of a base rental amount ("Base Rent") of $51,868.28 per month on the first day of each calendar month during the term of the lease. Exhibit A, Lease Agreement at ¶ II.A. The Lease Agreement stated that the lease was a "triple net lease" and must yield to MSIP "not less than the Base Rent." *Exhibit A, Lease Agreement at ¶ II.C.*

9. In addition to the Base Rent, the Lease Agreement also required Nissan to pay its proportionate share of "Operating Costs." Operating Costs included "all expenses, costs and disbursements incurred by Landlord in connection with the ownership, management, maintenance, operation and repair of the Property or the Building which Landlord shall pay or become obligated to pay in respect of a calendar year (regardless of when such Operating Costs were incurred)." *Exhibit A, Lease*

*Agreement at ¶ IV.A.* Pursuant to the Lease Agreement, Nissan's proportionate share was 80.11% *Exhibit A, Lease Agreement at ¶ IV.E.*

10. The Lease Agreement required MSIP to complete certain improvements to the I-55 Business Center, which were chargeable to Nissan. Paragraph XXVIII of the Lease Agreement provides:

> **Additional Tenant Improvements/Capital Improvements Rent.** Landlord and Tenant agreed that the Tenant Improvements shall be completed pursuant to this Paragraph XXVIII and in accordance and in the manner described in **Exhibit F**. Tenant agrees to pay to Landlord monthly in addition to the Base Rent for the Premises and Operating Costs those amounts calculated in accordance with **Exhibit F** and invoiced to Tenant by Landlord (the "Additional TI/CI Improvement Rent"). However, Tenant shall have the option to pay to Landlord any or all of the remaining balance due at any time. Following any payment of this nature, the Additional TI/CI Improvement Rent shall be reduced accordingly. If Tenant pays to Landlord the remaining balance due, then Tenant shall no longer remain liable for Additional TI/CI Improvement Rent. Tenant shall only be liable for actual work completed, and any increases in scope or pricing are subject to Tenant's approval.

11. The scope and pricing of improvements to the I-55 Business Center were set forth in Schedule 3 to Exhibit F of the Lease Agreement. The total cost of improvements was $1,321,977, of which MSIP was responsible for $270,843 and Nissan was responsible for $1,051,134.

12. Following the execution of the Lease Agreement, additional improvements became necessary to meet Nissan's requirements. These improvements increased the original scope of the construction project and were documented through "change orders." Nissan gave oral and/or written approval to these change orders. The additional improvements were completed at a cost of $596,735.00. All of the improvements

were made for the express purpose of meeting Nissan's needs and requirements for the leased space.

13. Nissan continued to lease the I-55 Business Center until, by letter dated August 29, 2014, Nissan provided notice to MSIP that it was exercising its right to terminate the lease as of November 30, 2014. A copy of Nissan's August 29, 2014 letter is attached hereto as Exhibit "B." The early termination of the lease is authorized by Paragraph XXIX of the Lease Agreement, which provides:

> **Right to Terminate.** So long as Tenant is not then in default under the terms and conditions of this Lease, Tenant shall have an ongoing right to terminate the lease with at least thirty (30) days prior written notice to Landlord prior to the sixth (6th), twelfth (12th), eighteenth (18th), twenty-fourth (24th), and thirtieth (30th) months of the initial term. Such early termination will result in Tenant's immediate and full payment of all of Landlord's unamortized leasing expenses including, but not limited to, Tenant improvements for the new dock doors, new trailer parking lot, the office space and lease commissions, and other Landlord's costs. The Termination Fees are described in **Exhibit G**.
>
> Unless and until Tenant pays Landlord the Termination Fee set forth [sic] this Paragraph XXIX, Tenant shall continue to pay Landlord the Base Rent, Additional TI/CI Improvement Rent and the Operating Costs.

14. According to Exhibit G of the Lease Agreement, Nissan's early termination of the Lease Agreement triggered a termination fee equal to "33% of all costs."

15. Nissan asserted that the early termination fee was $126,350.00. Nissan arrived at this figure by calculating 33% of MSIP's construction costs of $270,843.00 and commissions of $112,350. Based on this calculation, Nissan tendered to MSIP a check in the amount of $126,350.00.

16. By letter dated September 26, 2014, MSIP acknowledged receipt of Nissan's notice of termination, but also notified Nissan that it disagreed with its calculation of the early termination fee. A copy of MSIP's September 26, 2014 letter is attached

4

hereto as Exhibit "C." Consistent with Paragraph XXIX and Exhibit G to the Lease Agreement, MSIP calculated the early termination fee based on all of its costs, which included the improvements to the premises which were not paid by Nissan, the leasing commissions, construction management fees, and loan interest accrued during and after the construction, which totaled $1,106,080.18. Accordingly, MSIP notified Nissan that the 33% termination fee was $365,006.46. MSIP notified Nissan that it would accept its tender of $126,350.00 as partial payment of the termination fee, and demanded that Nissan remit the remaining $238,656.46 to comply with the Lease Agreement.

17. Despite multiple demands by MSIP, Nissan has not remitted the full termination fee and has continuously refused to do so.

18. In addition to its failure to pay the proper early termination fee, Nissan also has refused to pay for damages to the I-55 Business Center.

19. At the inception of the lease, MSIP delivered the premises to Nissan in "broom clean" condition, with all mechanical, plumbing, electrical, HVAC and life safety systems, lights, light ballasts, dock doors, dock levelers, and dock seals in good working order. Nissan accepted the premises without any reservations concerning pre-existing damages or defects.

20. In using the I-55 Business Center, Nissan agreed to comply with MSIP's rules and regulations. These rules and regulations, set forth in Exhibit D to the Lease Agreement, stated that the use of the property in the ordinary course of Nissan's business was at Nissan's sole risk and responsibility and Nissan assumed all liability and risk to the property. *See Lease Agreement, Exhibit D, at ¶2.* Nissan also agreed

that plate and other glass "which is broken through cause attributable to Tenants, its officers, agents, servants, employees, patrons, licensees, customers, visitors or invitees, shall be replaced" at Nissan's expense. *See Lease Agreement, Exhibit D, at ¶10.*

21. Paragraph VI of the Lease Agreement further identified Nissan's responsibilities, in pertinent part, as follows:

> A. Tenant shall at its own cost and expense keep and maintain all parts of the Premises (except as provided in Paragraph V) in good condition, promptly making all necessary repairs and replacements, including but not limited to, windows, glass and plate glass, doors, any special entry, interior walls and finish work, floors and floor covering, heating and air condition systems, dock boards, truck doors, dock bumpers, plumbing work and fixtures, termite and pest extermination, regular removal of trash and debris and keeping the parking areas, driveways, alleys and the whole of the Premises in a clean and sanitary condition.
>
> B. Tenant shall not damage any demising wall or disturb the integrity and support provided by any demising wall and shall, at its sole cost and expense, promptly repair any damage or injury to any demising wall caused by Tenant or its employees, agents or invitees.
>
> * * *
>
> F. Tenant shall upon demand by Landlord, pay, as additional rent, the cost and expense of repairing any damage to the Premises resulting from and/or caused in whole or in part by the negligence or misconduct of Tenant, its agents, servants, employees, patrons, customers, or any other person entering upon the property as a result of tenant's business activities or caused by Tenant's default hereunder to the extent the cost of repairing such damages is not reimbursed by the insurance to be maintained by Landlord under Paragraph XII.A.

22. With regard to improvements made by Nissan to the I-55 Business Center, the Lease Agreement provided that any such alterations, additions or improvements erected by Nissan became the property of MSIP as of the date of termination. Exhibit A, Lease

Agreement at ¶VII. The Lease Agreement permitted Nissan to remove trade fixtures as long as Nissan restored the premises to its original condition, "normal wear and tear excepted."

23. When Nissan delivered the premises to MSIP, the property was not in good condition or in its original condition with normal wear and tear excepted. In fact, the property was damaged and in a significant state of disrepair. To restore the property to good condition, and to its original condition prior to Nissan's use of the premises, MSIP incurred costs and expenses of $200,766.47. MSIP performed the following repairs which were necessary due to Nissan's use of the property and the manner in which it vacated the property:

   a. Painted all bollards, columns and fire protection areas;

   b. Replaced warehouse lights;

   c. Cleaned and repainted the interior office and bathrooms walls;

   d. Removed and replaced the interior office floor;

   e. Repaired and replaced several roll up warehouse interior doors;

   f. Repaired and patched concrete throughout the warehouse;

   g. Cleaned warehouse walls;

   h. Repaired and replaced the railing that protected the demising wall;

   i. Replaced and repaired the loading dock seals;

   j. Replaced the concrete in the front of the warehouse;

   k. Replaced one (1) fire hose apparatus;

   l. Repaired and replaced outside lighting;

   m. Re-attached bathroom stalls;

    n. Cleaned and swept the truck and employee parking areas;

    o. Added and leveled crushed material in the truck parking and loading areas;

    p. Replaced dock bumpers; and,

    q. Replaced four (4) glass window panes in the office area.

24. An itemized list of repairs and invoices were presented to Nissan along with a demand for payment. Nissan has disputed its responsibility for some or all of these repairs, and has failed to submit payment to MSIP as required by the Lease Agreement.

## COUNT I – BREACH OF CONTRACT -- IMPROVEMENTS

25. MSIP re-alleges and asserts each and every allegation contained in paragraphs 1-24 herein.

26. The Lease Agreement entered into by the parties contemplated substantial improvements to the I-55 Business Center prior to Nissan's occupation of the premises. The Lease Agreement required MSIP to make some of the improvements at its cost, but a substantial amount of improvements were required by Nissan at its own cost ("Tenant Improvements"). These improvements were identified in Exhibit F, Schedule 3, which is attached to and incorporated in the Lease Agreement. The Lease Agreement required Nissan to pay MSIP for the Tenant Improvements either by adding the cost to the monthly rent or making lump sum payments.

27. The Lease Agreement also contemplated potential increases in the scope or pricing of the improvements identified in Exhibit F, Schedule 3. With respect to increases, the Lease Agreement stated that Nissan would be liable for "actual work completed," and any increases in scope or pricing were subject to Nissan's approval.

28. During the construction phase, the Tenant Improvements increased substantially in scope and/or pricing. Numerous change orders were necessary to complete the improvements required by Nissan. These change orders were approved by Nissan and resulted in an additional $596,735.00 in construction expenses. As a result, the total cost of improvements reached $1,918,712.26. Of this amount, Nissan paid $1,130,272.00.

29. Nissan elected to terminate the lease as of November 30, 2014. The early termination of the lease resulted in a termination fee equal to 33% of MSIP's costs. In addition to $788,440.26 of unreimbursed construction costs, MSIP also incurred $112,035.00 in commissions, $65,403.16 in construction management fees, and $140,201.76 in interest charges since the beginning of construction. Therefore, MSIP's total costs are $1,106,080.18, which results in an early termination fee of $365,006.46.

30. To date, Nissan has only tendered $126,350.00 of the early termination fee and still owes MSIP $238,656.46.

31. Nissan's failure to pay the full early termination fee constitutes a breach of the Lease Agreement and Nissan is, therefore, in default pursuant to Paragraph XVIII of the Lease Agreement. Accordingly, MSIP is entitled to judgment against Nissan for $238,656.46, plus interest, costs and attorney's fees.

32. Additionally, Nissan's failure to pay the proper termination fee constitutes a breach of Paragraph XXIX of the Lease Agreement, which entitles MSIP to additional rent and operating costs incurred or accrued since November 30, 2014.

## COUNT II – BREACH OF CONTRACT -- REPAIRS

33. MSIP re-alleges and asserts each and every allegation contained in paragraphs 1-32 herein.

34. MSIP delivered the I-55 Business Center space to Nissan in good working condition and free from damages or defects. Nissan accepted the property with improvements and without reservation.

35. Nissan exercised its right to terminate the lease on November 30, 2014, but delivered the premises to MSIP in a state of disrepair. Pursuant to the Lease Agreement, Nissan is liable for damages for the cost of repairing damages to the premises caused by Nissan.

36. MSIP has expended $200,766.47 to restore the I-55 Business Center to good condition, and has demanded reimbursement from Nissan. Nissan has refused to pay for substantially all of these expenses.

37. Nissan's failure to return the premises to good working condition and failure to reimburse MSIP for its expenses in repairing the premises constitutes a breach of the Lease Agreement. Nissan is in default pursuant to Paragraph XVIII of the Lease Agreement.

38. Accordingly, MSIP is entitled to judgment in the amount of $200,766.47, plus interest, costs and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, MSIP respectfully prays for the following relief:

A. Payment of $238,656.46 for the remaining balance of the early termination fee due under the Lease Agreement;

B. Payment of $200,766.47 for the costs of repairs and clean-up of the I-55 Business Center;

C. Payment of additional rent and operating expenses incurred and accrued since November 30, 2014;

D. Payment of reasonable attorney's fees, costs, and interest; and,

E. All other relief to which MSIP may be entitled.

Respectfully submitted, this the 18th day of September, 2015.

MSIP I JACKSON, LLC

By: /s/ Edward Payne Atkinson
EDWARD PAYNE ATKINSON (MSB# 100447)
95 S. Green Street
Post Office Box 7359
Tupelo, Mississippi 38802-1208
Telephone: (662) 269-3543
Telecopier: (662) 269-3544
Email: payne@atkinsonpllc.com

MARK N. HALBERT (MSB #100048)
Mark N. Halbert, PLLC
95 S. Green Street
Post Office Box 1208
Tupelo, Mississippi 38802-1208
Telephone: (662) 269-3542
Telecopier: (662) 269-3544
Email: mhalbert@halbertlawfirm.com